UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| CRISTIAN AROLDO PINEDA DIAZ,<br>　　Petitioner,<br><br>　　v.<br><br>PATRICIA HYDE et al.,<br>　　Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 1:25-cv-00642-MSM-PAS

### ORDER

Mary S. McElroy, United States District Judge.

Before the Court is Christian Aroldo Pineda Diaz's Second Petition for Writ of Habeas Corpus. (ECF No. 5.) In a Text Order on December 22, 2025, the Court granted Mr. Diaz's First Petition for Writ of Habeas Corpus (ECF No. 1), ordering the Respondents "to provide him with a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within thirty days of the date of [the Court's] order," and further ordering the Respondents to release him "immediately pending the bond hearing." On January 8, 2026, an immigration judge ("IJ") held a bond hearing for Mr. Diaz, during which she found him to be a danger to the community and ordered him to be held without bond. (ECF No. 11 at 9.) The IJ rendered her decision notwithstanding the fact that it appeared that neither Mr. Diaz nor his attorney—who was outside the United States at the time and was given only ten minutes to prepare a response to the Government's arguments—had been notified that a bond

hearing was to be held that day. *See id.* Mr. Diaz challenges the IJ's decision. (ECF No. 5.) For the following reasons, the Court GRANTS Mr. Diaz's Petition.

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. Freedom from Government detention "lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Under the Due Process Clause, noncitizens subject to detention 8 U.S.C. § 1226(a) have a right to a bond hearing before an IJ. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

The mere fact that a bond hearing is held is not enough to satisfy the Due Process Clause's demands. Instead, as with any hearing implicating the rights protected by the Fifth Amendment, the bond hearing must be constitutionally sufficient. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976); *Hernandez-Lara*, 10 F.4th at 35. Evaluation of whether the Government's process was sufficient involves review of the factors outlined in *Matthews*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 335.  At the heart of these factors, "the essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990).

Here, the record before the Court demonstrates two clear procedural flaws in Mr. Diaz's January 8th bond hearing.  First, it appears that neither Mr. Diaz nor his attorney were adequately notified of when the bond hearing was to take place.  Mr. Diaz's attorney avers that the only notice related to that date related to a Master Calendar Hearing, not a bond hearing, and that he had previously been granted a continuance on the removal proceedings on account of a pre-planned vacation outside the United States.  *See* ECF No. 5-1; *see also* ECF No. 11 at 7 (describing the timing of Mr. Diaz's immigration proceedings).  In its Response to Mr. Diaz's Petition, the Respondents state that his "bond redetermination hearing was scheduled for January 8, 2026," and that his attorney "received a Master Calendar Hearing notice," but the Respondents acknowledge that Mr. Diaz had obtained a continuance regarding the Master Calendar Hearing and does not appear to expressly claim that Mr. Diaz or his attorney had been notified that a bond hearing was to be scheduled for January 8. (ECF No. 8 at 1–2.)

The second procedural flaw in Mr. Diaz's bond hearing is the IJ's refusal to grant Mr. Diaz any continuance in his proceedings, depriving him of an opportunity to be heard "in a meaningful manner."  *See Aponte-Rosario*, 617 F.3d at 9.  When

neither Mr. Diaz nor his attorney appeared at the hearing, the IJ called the attorney, who was, prior to that hearing, only representing Mr. Diaz with respect to his removal proceedings. (ECF No. 11 at 2–4.) Notwithstanding the fact that the attorney was out of the country on vacation, and over his protestations that neither he nor Mr. Diaz had been properly notified of the bond hearing, the IJ permitted the attorney to enter his appearance with respect to Mr. Diaz's bond proceedings, refused his oral motion for a continuance, and instead gave him ten minutes to prepare a response to the Government's argument that Mr. Diaz was a danger to the community. *Id.* at 5–10. While the decision to grant a continuance is normally within the IJ's discretion upon a showing of good cause, *see* 8 C.F.R. § 1003.29, Mr. Diaz's attorney had no meaningful opportunity, outside of those ten minutes, to prepare any arguments, evidence, or witnesses to challenge the Government's claims of dangerousness. *See id.*

Under these circumstances, the Court finds that the January 8, 2026 bond hearing was constitutionally inadequate. Applying the *Matthews* factors, Mr. Diaz's private interest in his own liberty and the risk of an erroneous deprivation of that liberty through rushed bond proceedings, as well as the minimal inconvenience to the Respondents posed by proper notice (and, if necessary, a continuance in those proceedings), all weigh heavily in favor of his constitutional challenge to the IJ's order. The Respondents' only substantive argument against Mr. Diaz's Petition is that he failed to exhaust administrative remedies before filing suit, *see* ECF No. 8, but—as in other recent immigration cases involving constitutional challenges to the

4

Government's denial of adequate bond proceedings—the Court finds waiver of any exhaustion requirement to be appropriate. *See, e.g., Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *6–7 (D.R.I. Dec. 3, 2025).

As such, the Court GRANTS Mr. Diaz's Second Petition for Writ of Habeas Corpus (ECF No. 5.)  The January 8, 2026, bond hearing is DECLARED to have violated Mr. Diaz's Due Process Rights under the Fifth Amendment, and the resulting order denying him bond is ORDERED null and void.  The Respondents are ENJOINED from relying on the January 8, 2026, bond determination, and are ordered not to conduct any future bond hearings for Mr. Diaz without providing him with proper notice and a meaningful opportunity to be heard.  The Respondents are ORDERED to provide Mr. Diaz with a constitutionally adequate bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within thirty days of the date of this order.  Should Mr. Diaz be in custody as of the time of this Order, the Respondents are ORDERED to release him immediately pending the bond hearing. The Respondents may transfer the Petitioner if necessary to effectuate his release consistent with this Order.  Finally, the Court ORDERS the Respondents to file a status report within five days of Mr. Pineda Diaz's bond hearing, stating whether he has been granted bond and, if his request for bond was denied, the reasons for that denial.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

March 30, 2026